UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

REBUILD NORTHWEST FLORIDA,
INC.,

    Plaintiff,

v.                                           CASE NO. 3:17cv441-MCR/HTC

FEDERAL EMERGENCY
MANAGEMENT AGENCY,
BROCK LONG, Administrator of
Federal Emergency Management
Agency; FLORIDA DIVISION OF
EMERGENCY MANAGEMENT,

    Defendants.
_____/

# ORDER

The Federal Emergency Management Agency ("FEMA") previously obligated hazard mitigation grant funds to assist the State of Florida in amounts initially totaling over $400 million after four major hurricanes impacted the State in 2004 and 2005. Plaintiff Rebuild Northwest Florida, Inc. ("Rebuild") was a subgrantee, approved to receive more than $7 million under the various grants for wind retrofit projects designed to make homes less vulnerable to future storms. The time for Rebuild to perform under its subgrants expired in 2016, but additional original grant money ($16,758,60,916) remained available to the State for distribution to subgrantees until 2017, when FEMA decided to deobligate those

remaining funds.[1] As a result, those remaining original grant funds are now unavailable to the State for distribution to future projects.

Rebuild brings suit, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-706, and the Robert T. Stafford Disaster Relief and Emergency Assistance Act (the "Stafford Act"), 42 U.S.C. §§ 5121-5208, asserting in the Second Amended Complaint that the deobligation decision was improper agency action. Rebuild seeks declaratory relief to establish that the grant funds in the amount of $16,758,60,916 remain available to the State for distribution and, in turn, to Rebuild as a subgrantee. FEMA moves to dismiss, *see* Fed. R. Civ. P. 12(b)(1), (6), challenging the Court's subject matter jurisdiction and alternatively arguing that the complaint fails to state a claim. ECF No. 47. After careful review, the motion will be granted and the case dismissed for lack of jurisdiction.

**I.     Background**[2]

In the span of a little over one year, Florida was hit by four major hurricanes: Hurricane Charley in August of 2004, Hurricanes Ivan and Jeanne in September of

---

[1] For ease of reference, the Court is collectively referring to the federal Defendants—FEMA and its administrator, Brock Long—under the term "FEMA."

[2] The facts are taken from the Second Amended Complaint, documents incorporated by reference that are attached to the original Complaint, and portions of the administrative record submitted by FEMA in its first motion to dismiss, ECF No. 16, and incorporated by reference in the pending motion. Documents attached to the pleadings and central to the claims are properly considered on a motion to dismiss. *See SFM Holdings, Ltd. v. Banc of America Securities*, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010). It is also proper to consider matters outside the complaint on a Rule 12(b)(1) motion. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

2004, and Hurricane Wilma in October of 2005. At the request of Florida's Governor and pursuant to the president's discretionary authority under the Stafford Act, 42 U.S.C. § 5170, then-President George W. Bush declared each hurricane a "major disaster" and directed FEMA to provide Florida with disaster relief under the Hazard Mitigation Grant Program ("HMGP"), 42 U.S.C. § 5170c. To carry out this directive, FEMA and the State of Florida then executed "FEMA-State Agreements" for each hurricane, by which FEMA agreed to grant the State through the Florida Division of Emergency Management ("FDEM") (grantee) "funds in the amount specified on the obligating document." ECF No. 1-1 at 7. The FEMA-State Agreements imposed "binding obligations" on both parties and subgrantees under the Stafford Act's implementing regulations.[3] ECF Nos. 1-1, 1-2, 1-3, 1-4 (Exhibits A, B, C, D); *see also* 44 C.F.R. §§ 206.44(a), 206.430, *et seq*. Relevant terms in the agreements included the following: the grant award activities were to be "completed within the time period prescribed in FEMA regulations and on the obligating documents;" FEMA was authorized to grant extensions of the performance time; FEMA was permitted to assert remedies for noncompliance as provided under federal regulations; and either party could terminate the agreement on seven days' notice, *e.g.,* ECF No. 1-1 at 9, 15, 16.

---

[3] The FEMA-State Agreement "imposes binding obligations on FEMA, States, their local governments, and private nonprofit organizations within the States in the form of conditions for assistance which are legally enforceable." 44 C.F.R. § 206.44(a).

The HMGP implementing regulations required FDEM to develop plans for administering and managing the grant funds. *See* 44 C.F.R. § 206.437. The relevant FDEM "State Administrative Plans" included terms and procedures by which eligible subgrantees could apply to the State for funds to be used in approved mitigation work, subject to final approval by FEMA.[4] The State Administrative Plans (and also subsequent subgrants) were subject to a Period of Performance ("POP") limitation that required all HMGP funds to "be disbursed, and all activities completed, not later than three years from the date of the grant award (obligations) *to the State*." ECF Nos. 1-5 at 10-11; 1-6 at 11 (emphasis added). FDEM could request extensions, provided "[t]he total POP should not exceed five years." ECF Nos. 1-5 at 10-11; 1-6 at 11. Under these terms, which were consistent with the pertinent federal regulations, any "funds not disbursed by [FDEM] within the approved POP [would] be deobligated and returned to FEMA."[5] ECF Nos. 1-5 at 11; 1-6 at 11. FEMA approved the State Administrative Plans in 2005 and 2006. FDEM subsequently entered into Subgrant Agreements (cost-reimbursement

---

[4] Prior to the award of HMGP funds, a state is required to develop a State Administrative Plan, which is a "brief but substantive plan documenting the State's process for the administration of the Hazard Mitigation Grant Program." 44 C.F.R. § 206.437(c), (d). FEMA approved FDEM's plans for Hurricanes Charley, Ivan, and Jeanne on January 4, 2005, and for Hurricane Wilma on May 31, 2006. ECF Nos. 1-5, 1-6 (Exhibits E, F).

[5] The cited regulation, 44 C.F.R. § 13.50, which required the grantee to "immediately refund to the Federal agency any balance of unobligated (unencumbered) cash advanced that is not authorized to be retained for use on other grants," was "removed and reserved" as of December 19, 2014. *See* 79 FR 75871-01, 2014 WL 7235775.

agreements) with Rebuild, based on its qualifying HMGP proposals. Under the Subgrant Agreements, Rebuild's performance deadlines, with authorized extensions, expired in 2016, and those subgrants are not at issue.[6]

In 2017, more than ten years after the major disaster hurricane declarations at issue in 2004 and 2005, FEMA decided to "deobligate" the remaining original unused HMGP funds previously obligated to the State under the FEMA-State Agreements but which were never disbursed. According to Rebuild, this totaled $16,758,609, as of June 27, 2017.[7] *See* ECF No. 1-7. Rebuild then filed this suit, challenging FEMA's deobligation decision.

In the Second Amended Compliant, Rebuild references the Stafford Act as the authorization for the binding agreements and the HMGP funds and cites the APA as

---

[6] The agreements between FEMA and FDEM, which incorporated federal regulations, provided an administrative appeal procedure, allowing applicants and subgrantees to appeal decisions made regarding their proposals or the provision of funds. *E.g.*, ECF No. 1-5 at 25-26 (allowing subgrantees to dispute material facts on which a grantee made a decision on a proposal); *see also* 44 C.F.R. § 206.440 (stating "[a]n eligible applicant, subgrantee, or grantee may appeal any determination previously made related to an application for or the provision of Federal assistance" within 60 days after receipt of notice of the action being appealed). Rebuild's mitigation project POPs were set to expire on June 6, 2009 (Hurricane Ivan); May 31, 2010 (Hurricane Wilma); and October 13, 2012 (Hurricanes Charley and Jeanne). ECF Nos. 1-12, 1-13, 1-14, 1-15 (Exhibits L, M, N, O). Rebuild received extensions that ended in June 2016. Rebuild's requests for additional extensions after that date were denied by FEMA through two levels of administrative appeal. However, Rebuild concedes that these subgrants and related POP deadlines and extensions are not at issue in this case.

[7] As to Hurricane Wilma, Rebuild is challenging a decision to "constructively deobligate" funds.

the basis for jurisdiction and the waiver of sovereign immunity.[8] Rebuild alleges that FDEM filed administrative appeals challenging FEMA's deobligation decisions, which were denied, and that, although the deobligated funds were not yet disbursed to any subgrantee, Rebuild is the only subgrantee eligible to perform work on approved HMGP projects. Rebuild further alleges, and FDEM admits in its Answer, that FDEM intends to subgrant all remaining available HMGP funds to Rebuild to complete eligible projects. Thus, Rebuild seeks a declaratory judgment stating that FEMA's deobligation decision was improper, and that grant money in the amount of $16,758,609 remains available to FDEM for use in eligible projects "as it sees fit, consistent with the applicable State Administrative Plan and the applicable FEMA-State Agreements." ECF No. 43. Rebuild further seeks a declaration that it is the only eligible subgrantee and requiring FEMA's administrator, Brock Long, to make the funds available to the State. FEMA argues that the Court lacks jurisdiction over the claims.[9]

---

[8] The Court previously dismissed the Complaint with leave to amend to include a more definite statement because Rebuild's claims and the basis for jurisdiction were unclear.

[9] FEMA attached the declaration of Jacky Bell, FEMA's Region IV Deputy Director of Mitigation, to the motion to dismiss, who states that the amounts FEMA deobligated were in fact much smaller than the over $16 million alleged in the Second Amended Complaint and that most of the grants designated to Rebuild's projects have been closed out. In response, Rebuild argues that the declaration is misleading, because it refers to funds already awarded to Rebuild, whereas the Second Amended Complaint challenges the deobligation of funds that FEMA has not yet disbursed to Rebuild. Rebuild argues that Bell's statement is irrelevant because "it may be that the figures provided in her declaration refer to the amount of funds already awarded to Rebuild, *not* the amount of obligated funds remaining under the FEMA-State Agreements." ECF No. 50 at 8. The Court agrees and has not considered the declaration in ruling on the motion.

## II. Legal Standard

The limitations placed on a federal court's subject-matter jurisdiction serve the important institutional interest of keeping federal courts within the bounds prescribed by the Constitution and Congress. *Allapattah Servs., Inc. v. Exxon Corp.*, 362 F.3d 739, 753 (11th Cir. 2004) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). Thus, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

When a party challenges the court's subject-matter jurisdiction pursuant to Rule 12(b)(1), the challenge may be either facial or factual. *McElmurray v. Consol. Gov't of Augusta – Richmond Cnty*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)[10]). A "facial attack" requires the court to take the allegations of the complaint as true for purposes of the motion and consider whether the "plaintiff has sufficiently alleged a basis for subject-matter jurisdiction." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)); *see also* Fed. R. Civ. P. 8(a) (requiring only a short and plain statement of the grounds for the court's jurisdiction and a short and plain statement of the claim

---

[10] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting the case law of the former Fifth Circuit before October 1, 1981, as precedent in this Circuit).

and relief sought). A "factual attack," on the other hand, challenges "the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered."[11] *Lawrence*, 919 F.2d at 1529 (citing *Menchaca*, 613 F.2d at 511). FEMA brings a factual attack, relying on parts of the administrative record. Therefore, the Court is not required to accept the allegations of the complaint as true.

### III. Discussion

FEMA is a federal agency, mandated to provide federal relief to victims of natural disasters when a disaster is declared by the president. Sovereign immunity shields the federal government and its agencies from suit in the absence of an express waiver. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The Stafford Act does not include its own waiver of sovereign immunity. To the contrary, the Stafford Act expressly precludes a challenge to discretionary functions of the agency, stating: "The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty . . . in carrying out the provisions of this chapter." 42 U.S.C. § 5148; *see Burgos-Montes v. Municipality of Yauco*, 294 F. Supp. 2d 141, 142 (D.P.R. 2003) (stating, Congress has "passed legislation expressly immunizing the agency from

---

[11] The federal Defendants also move to dismiss for failure to state a claim, but because the Court dismisses on jurisdictional grounds, there is no need to address Rule 12(b)(6).

suit"). Notably, the Eleventh Circuit has stated that, "[b]y enacting [§] 5148, Congress indicated its intent to preclude judicial review of all disaster relief claims based upon the discretionary actions of federal employees." *Rosas v. Brock*, 826 F.2d 1004, 1008 (11th Cir. 1987). The Eleventh Circuit in *Rosas* acknowledged that not every claim under the Stafford Act involves discretionary agency action, and so, not every claim is barred; that said, the court made clear that an agency's eligibility decision or similar act for which the "Act does not contain any guidelines" involves "the sort of exercise of discretion that Congress intended to insulate from judicial review."[12] *Id.* at 1008-09.

Rebuild argues that *Rosas* does not apply because it is not challenging a discretionary decision of FEMA but, rather, agency action contrary to the FEMA-State Agreements and State Administrative Plans, which are considered to have created binding obligations under the Stafford Act. Rebuild argues that by these agreements, FEMA created a binding obligation to provide all of the grant money to the State, which is enforceable under the APA. In the circumstances presented, the Court disagrees. While these agreements undoubtedly contain binding obligations between the parties (FEMA and the State), they are legally binding on terms that do

---

[12] The Eleventh Circuit in *Rosas* also found, in the context of disaster unemployment assistance that, under § 5148, Congress did not preclude judicial review of allegedly unconstitutional agency action but did preclude judicial review of an eligibility claim, which was discretionary. Consequently, the district court in *Rosas* lacked subject matter jurisdiction over the eligibility claim. 826 F.2d at 1008-09.

not apply here. Rebuild does not identify any provision in the Stafford Act or the applicable agreements that precludes FEMA from deobligating grant funds after more than ten years have passed, as in this case. The agreements themselves were terminable on seven days' notice by either party, and were also subject to POP limits, which should only total five years from the date of the original grant.[13] Moreover, the State Administrative Plans expressly acknowledged that funds not disbursed by the State within the POP would be deobligated, ECF Nos. 1-5 at 11; 1-6 at 11, and no administrative or judicial review is provided in the agreements for challenging such a decision.[14] In fact, nothing in the Stafford Act HMGP program, the applicable federal regulations, or the agreements prohibits a discretionary decision by FEMA to deobligate federal grant funds after more than ten years from the date of the

---

[13] Rebuild states it is not suing on the contracts or to appeal the POP extension denials, but rather to enforce regulatory funding obligations implemented by the agreements. If it were suing for damages or specific performance on a breach of contract claim, the Court would lack jurisdiction because under the Tucker Act, the Federal Court of Claims has exclusive jurisdiction over contractual disputes with the United States for claims of damages of $10,000 or more. *See Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1229–30 (5th Cir. 1976) (holding the Court of Claims had exclusive jurisdiction over contract claims against the United States) (binding in this Circuit under *Bonner*).

[14] Again, under the agreements, "[t]he total POP should not exceed five (5) years[.]" ECF No. 1-6 at 11. Rebuild maintains that this suit does not involve any challenge to the denial of a POP extension and asserts that FEMA mischaracterizes its claims by arguing that the case involves such denials. Rebuild argues that its period of performance for the funds challenged could not have expired given that it has never commenced activities with regard to the disputed funds, because the funds have never been disbursed or otherwise made available to Rebuild. This argument, however, ignores the fact that the agreements include grant award limits, capping the time period for a grant award to five years from the date of the initial grant award *to the State*. *See* ECF No. 1-6 at 11 ¶F.1. The fact that FEMA extended deadlines beyond this time, which are not challenged, illustrates its discretionary authority.

original grant.  Because the deobligation decision is a discretionary function,[15] the Stafford Act does not provide a waiver of sovereign immunity or a basis for subject matter jurisdiction.  *See* 42 U.S.C. § 5148.

Rebuild argues nonetheless that the Court has jurisdiction under the APA to enforce FEMA's Stafford Act contractual funding obligations, relying on *Bowen v. Massachusetts*, 487 U.S. 879 (1988), for support. The Court finds this reliance misplaced.  In *Bowen,* the Supreme Court found APA jurisdiction to review a final agency order refusing reimbursement to a state for expenses under a Medicaid program.  While it is accurate to say that here, similar to *Bowen*, the plaintiff seeks to enforce a funding obligation rather than to obtain money damages, *Bowen* is easily distinguishable.  The decision in *Bowen* was premised on the existence of a federal statute that *mandated* reimbursement of the costs at issue—the state had incurred costs and was seeking to enforce its right to reimbursement under the statute.  *See* 487 U.S. at 885-86, 893-94, 900-01.  That is a far cry from this case, where the

---

[15] An agency decision is discretionary, and thus precluded under the Stafford Act, where (1) a choice or judgment is involved in the performance of the function and no statute mandates a particular course of action, and (2) the activity is grounded in social, economic, or political activity. *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1998).  Rebuild argues that a decision as to whether deobligation is a discretionary agency action under these factors goes beyond the pleading stage. The Court disagrees and notes that it has considered each of the *Berkovitz* factors and concludes that they are satisfied, especially in this situation where it is clear that all performance terms of the agreements related to the original grant funds had expired. *See generally Freeman v. United States*, 556 F.3d 326, 340 (5th Cir. 2009) (stating "decisions about when, where, and how to allocate limited resources within the exigencies of an emergency are the types of decisions that the discretionary function exception [of the Stafford Act] was designed to shelter from suit").

disputed grant funds had never been disbursed to Rebuild or disallowed, and nothing in the Stafford Act mandated payment of the funds after expiration of the period of performance. Rebuild's argument assumes that FEMA's funding obligations continued in perpetuity and were not subject to a discretionary deobligation. As noted above, however, deobligation in the circumstances alleged was expressly authorized under the FEMA-approved State Administrative Plans, in which FDEM agreed that, "in keeping with the program regulations . . . any funds not disbursed by the grantee within the approved POP will be deobligated and returned to FEMA."[16] ECF Nos. 1-5 & 1-6 at 11. Consequently, the APA similarly provides no grounds for jurisdiction or waiver of sovereign immunity for the discretionary action challenged.[17] *See* 5 U.S.C. § 701(a), 702; *see also McClendon v. Ga. Dep't. of Community Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) ("Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power

---

[16] To the extent the agreements can be construed as *requiring* deobligation after that time, the decision would not be discretionary. But if that were the case, the Second Amended Complaint would fail to state a claim because on its face, FEMA's action would not be contrary to the documents containing the binding obligation but instead would be in accordance with them.

[17] Although sovereign immunity is waived under the APA for claims in which a plaintiff seeks non-monetary relief based on final agency action, nothing in the APA "confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 42 U.S.C. § 702. The Court has found that the Stafford Act forbids the declaratory relief Rebuild seeks, and thus relief under the APA is likewise precluded under its terms. The Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction either, nor does it waive sovereign immunity. Rebuild does not argue otherwise.

established in Article III . . . federal courts lack jurisdiction to entertain suits that are barred by the Eleventh Amendment.").

As an alternative ground for dismissal, the Court notes a concern with Rebuild's standing to bring suit. Rebuild has made only a conclusory allegation that it is aggrieved by the challenged agency action. Rebuild does not allege that it applied for these remaining HMGP funds or that it incurred any costs for which the statute or the governing documents require reimbursement.[18] To the contrary, Rebuild's argument that it was never given a POP deadline for these remaining funds because the funds were not yet disbursed tellingly illustrates its lack of a concrete injury. On Rebuild's allegations, it has lost only the *opportunity* to *apply* for these funds, which is a speculative injury at best. A speculative, as opposed to concrete, injury is not grounds for standing. *See Salcedo v. Hanna*, No. 17-14077, 2019 WL 4050424, at *2 (11th Cir. Aug. 28, 2019) ("A concrete injury must be de facto; that is, it must actually exist, as opposed to being hypothetical or speculative.") (internal marks omitted). As the Eleventh Circuit has recently reiterated, "the requirement of

---

[18] FDEM admitted in its Answer that Rebuild is eligible and if the funds were available, it would approve further funding to Rebuild. However, Rebuild has no enforceable right to more funds. And in any event, any application would need approval not only from FDEM but also FEMA before Rebuild had any claim to the remaining HMGP funds. "Eligibility determinations, the distribution of limited funds, and other decisions regarding the funding of eligible projects are inherently discretionary." *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 325 (5th Cir. 2009).

CASE NO. 3:17cv441-MCR/HTC

injury in fact is a hard floor of Article III jurisdiction." *Id.* at *3 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)).

Accordingly, the Federal Emergency Management Agency and Brock Long's Motion to Dismiss, ECF No. 47, is **GRANTED**. Rebuild's claims against the federal Defendants are **DISMISSED WITHOUT PREJUDICE**[19] for lack of subject-matter jurisdiction and any claim against FDEM is **DISMISSED as MOOT**. Rebuild's request for oral argument is **DENIED**. The Clerk is directed to tax costs against the Plaintiff and close the file.

**DONE AND ORDERED** this 30th day of September 2019.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[19] "[A] jurisdictional dismissal is entered without prejudice." *Salcedo*, 2019 WL 4050424, at *8, n.12 (citing *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008)).